### S01A1832. RABON v. BROWN.
(561 SE2d 816)

HINES, Justice.

We granted Rabon's application for discretionary appeal to consider whether Rabon had adequate notice that at the hearing on his affidavit of illegality made in response to the filing of a writ of fieri facias by his ex-wife, Brown, Brown would seek to prove that Rabon was in arrears for support amounts allegedly past due under orders entered prior to the final judgment in the modification action between the parties. For the reasons which follow, we find that Rabon was not afforded adequate notice, and accordingly, we reverse and remand.

A chronology of the parties' litigation is necessary. Rabon and Brown were divorced in 1988. Apparently, the divorce decree awarded custody of their then three minor children to Brown,[1] and provided, inter alia, that Rabon pay $175 per week in child support. In 1996, Rabon gained custody of the couple's younger son, and his support obligation was reduced to $125 a week. In 1998, Brown filed an action seeking custody of the younger son and a modification of Rabon's support obligation. Apparently, Rabon also filed a modification action, in which he sought custody of the parties' minor daughter.[2] On October 19, 1998,[3] the Superior Court of Decatur County issued a temporary order returning custody of the son to Brown, following the son's election to live with her. Acknowledging that Brown would then have custody of two minor children (the parties' oldest child was then 18), the court required Rabon to pay, as temporary child support, $230 per week as follows:

(1) $175 per week from October 9, 1998 and continuing until further notice.

(2) the balance of $55 per week to accrue commencing with the payment on October 9, 1998 and continuing "until such time as the Florida Coast Paper Company [Rabon's employer] . . . reopens so that [Rabon] can return to work."

---

[1] A copy of the final judgment and decree of divorce has not been included in the record on appeal.

[2] This action is not included in the record on appeal.

[3] It is claimed that there was a prior temporary order modifying support with regard to the daughter, but this order does not appear in the record.

(3) "Upon said plant reopening so that [Rabon] can return to work, upon the first Friday after his return to work . . . $230 per week . . . and in addition thereto shall pay on the total amount of child support accrued, at that time, at the rate of $30 per week until such time as the accrued amount is paid in full."

On June 22, 1999, the superior court found Rabon in contempt of the October 1998 order for failure to pay the support, and that he was in arrears in the amount of $3,703.76. On February 2, 2000, the court entered a final judgment and decree on the parties' petitions for modification. It granted Rabon's oral motion to dismiss his sought change of custody of the daughter following the daughter's testimony that she desired to continue to live with Brown, and continued custody in Brown; it also awarded final custody of the minor son to Brown. But the court found that Rabon had established that he had suffered a downward change in income since the setting of temporary child support, and consequently, required Rabon to pay child support of $173.60 per week, commencing September 24, 1999; Rabon was also ordered to pay $36.67 per month for medical insurance for the children. The order was entered nunc pro tunc to September 24, 1999.

On June 6, 2000, Brown filed an "affidavit for fi. fa." stating that "a final judgment and decree was entered . . . on September 24, 1999 requiring [Rabon] to pay the sum of $173.60 per week [to Brown]; that [Rabon] has defaulted in making these payments and is now $4421.35 in arrears." That day a writ of fieri facias, reflecting Rabon's weekly support obligation and the alleged arrearage, was entered on the general execution docket. Subsequently, on December 18, 2000, Rabon filed an affidavit of illegality[4] stating that he had made every weekly payment of $173.60 since September 24, 1999; that all payments since February 2000 had been paid directly by his employer through an income deduction order obtained by Brown's counsel; that he was not in arrears in any amount on the final judgment and decree; and that he owed nothing to Brown.

The court held a hearing on Rabon's affidavit of illegality on January 19, 2001, at which Brown admitted that the affidavit was correct with two exceptions. She took issue with Rabon's averments that "[the stated arrearage] is false" and (2) "I owe [Brown] nothing." Brown claimed that even if the amount stated in the writ of fieri facias was incorrect, Rabon was indebted to her for his obligations for child support and the furnishing of the children's medical insurance pursuant to the temporary orders entered in the case. Over Rabon's objection, the court allowed Brown to have the writ of fieri facias amended and to present evidence of Rabon's failure to make pay-

---

[4] See OCGA § 9-13-120.

ments required by temporary orders in the case.

On April 30, 2001, the trial court entered an order on the affidavit of illegality, ruling that no arrearage existed as a result of the final order, but that following credit for an amount already received by Brown, Rabon was $3,221.85 in arrears for court-ordered payments prior to the final judgment. In so doing, the court found that Rabon owed $770 in medical and hospital insurance premiums "as required by the temporary order and the final decree," as well as 40 weekly payments of $55 subsequent to September 19, 1998, ruling that even though Rabon did not return to work at the named paper company, the intent of the temporary order was that, when Rabon was employed again, he would have to pay the $55 a week that had been accruing.

1. The trial court erred in considering, at the hearing on the affidavit of illegality, evidence of Rabon's failure to make payments under temporary support orders in the case, and consequently, in finding an arrearage based upon such evidence. Contrary to Rabon's assertion, the writ of fieri facias could be amended to allow Brown to include claims from temporary orders preceding the final judgment. As acknowledged by Rabon, OCGA § 9-13-5 provides that "[a] writ of fieri facias may be amended so as to conform to the judgment upon which it issued." What is more, any payment or installment of support under any child support order is an enforceable judgment on and after the date it is due. OCGA § 19-6-17 (e).

But the fact that the writ of fieri facias was subject to amendment does not end the inquiry. The trial court's actions in entertaining additional evidence in support of the writ of fieri facias and in ruling on the evidence had to be tempered with the principle of due process that a litigant must be given fair notice and an opportunity to be heard before the disposition of a case on the merits. *Regency Club v. Stuckey*, 253 Ga. 583, 586 (3) (324 SE2d 166) (1984). See also *Kim v. State*, 272 Ga. 343, 344 (528 SE2d 798) (2000); *Williams v. Tritt*, 262 Ga. 173, 175 (2) (415 SE2d 285) (1992). Moreover, the opportunity to be heard must be a meaningful one. *James B. Beam Distilling Co. v. State of Ga.*, 263 Ga. 609, 612 (3) (437 SE2d 782) (1993). That is not what occurred here. Both the writ of fieri facias and the affidavit in support thereof cited only the final judgment and decree of September 24, 1999, and Rabon's weekly support obligation under it; there was no mention of an attempt to collect sums allegedly owed by Rabon because of prior support orders. Accordingly, Rabon's responding affidavit of illegality addressed only the allegations of nonpayment under the terms of the final judgment and decree. Consequently, there was nothing to put Rabon on notice that the hearing on his challenge would encompass issues other than those raised by his affidavit of illegality and the precipitating writ of

fieri facias. Contrary to Brown's assertions, fair notice to Rabon was not accomplished merely because the temporary support orders bore the same superior court case number as the final judgment and decree or because the issue of Rabon's compliance with the temporary orders may have been tried in prior garnishment proceedings in another court. In the present proceeding, i.e., the resolution of the affidavit of illegality, Rabon did not have fair notice that he would be forced to defend allegations and evidence of his failure to pay under any order other than the final judgment and decree, and thus, he did not have a meaningful opportunity to be heard. *James B. Beam Distilling Co. v. State of Ga.*, supra at 612 (3).

Accordingly, the judgment of the superior court must be reversed and the case remanded to the superior court for action consistent with this opinion.

2. Rabon's remaining contentions of error are either without merit or unlikely to recur on remand.[5]

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED MARCH 28, 2002.

*James N. Finkelstein*, for appellant.
*Smith & Perry, Ralph C. Smith, Jr.,* for appellee.

---

[5] Rabon complains:

(1) He had the right to trial by jury under OCGA § 9-13-127 with regard to Brown's claims under the temporary orders. But such a right can be waived by participation in a bench trial without objecting to proceeding without a jury. *Matthews v. Matthews,* 268 Ga. 863, 864 (2) (494 SE2d 325) (1998). The matters in dispute on remand will determine the right to trial before a jury. OCGA § 9-13-127;

(2) The superior court improperly included amounts not reduced to a money judgment, but rather owed under an oral agreement between the parties. However, it cannot be concluded that the superior court based an award of the amounts in question on the alleged oral agreement;

(3) The superior court improperly included amounts of $55 per week due under a temporary order because by its terms, Rabon was required to pay this amount only if the named paper company reopened and he went back to work there. But the superior court was within its authority to interpret the temporary order as requiring Rabon to pay the $55 per week once he resumed work regardless of his place of employment. *Millner v. Millner*, 260 Ga. 495, 497 (2) (397 SE2d 289) (1990); and

(4) The June 1999 contempt order was res judicata concerning any arrearage under the October 1998 temporary order. However, as the final judgment and decree in the modification was not entered until February 2, 2000, the 1999 contempt order is not res judicata in regard to required payments subsequent to June 1999 but prior to entry of the final judgment and decree.